Opinion
THE COURT.*
Defendant and appellant, Balwant Singh, was convicted of a violation of Vehicle Code, section 22349, exceeding the maximum speed limit, and now appeals. In this appeal it is conceded that there was a posted, prima facie limit, that radar established defendant was traveling in excess of 65 miles per hour; and that the officer cited appellant for exceeding the maximum speed law, but did not cite him for exceeding the lower, posted, prima facie limit, Appellant’s position is that if there is a speed trap as to a posted limit, it is unlawful to enforce even the maximum speed limit. This appeal turns on the definition of “speed trap” contained in section 40802 of the Vehicle Code.
Stripped of the phrases which explain or expand on subjects not in issue here, the relevant portion of the statute in question reads:
“(a) A ‘speed trap’ is either of the following: [1Q . . . HD
“(2) A particular section of a highway with a prima facie speed limit. . . under . . . Section 22352, or . . . under Section 22354, 22357, 22358, or 22358.3, if that prima facie speed limit is not justified . . . , and enforcement of the speed limit involves the use of radar . . .” (Veh. Code, § 40802, subd. (a), italic added.) (The full text of the section is set forth in the appendix, post.)
The question we must answer is whether the emphasized “speed limit” means any speed limit for which the citation was issued, or rather, only those speed limits referenced in the antecedent portion of Vehicle Code, section 40802, subdivision (a)(2).
Appellant relies upon the persuasive effect of People v. Studley (1996) 44 Cal.App.4th Supp. 1 [52 Cal.Rptr.2d 461], a case with the same significant facts as this matter on appeal and in square agreement in its decision. In Studley, the court relied upon the legislative intent found in the entire *Supp. 16 legislative scheme regarding radar and found the radar evidence inadmissible: “[A]fter a close reading of the statutes in question, we find the Legislature’s antipathy toward any radar-based prosecution of any speed law violation in any posted zone, where the prima facie speed limit is not justified by proof of a timely engineering survey, is absolute and unequivocal.” (Id. at p. Supp. 3, italics omitted.)
On the other hand, the People rely on the persuasive effect of the precisely contrary interpretation of the speed trap laws as set forth in People v. DiFiore (1987) 197 Cal.App.3d Supp. 26 [243 Cal.Rptr. 359]. DiFiore reasoned: “A person who drives in excess of the maximum lawful speed has not been subjected to a ‘speed trap’ even if his speed has been detected by radar on a posted road unless the officer relies on the posted or prima facie speed limit.” (Id. at p. Supp. 29.)
Faced with these contrary interpretations of Vehicle Code section 40802, this court engages in its own analysis of the statute, and follows the guidelines for construction and interpretation of a statute as explained in J.A. Jones Construction Co. v. Superior Court (1994) 27 Cal.App.4th 1568, 1575-1576 [33 Cal.Rptr.2d 206]:
“The extent to which the intent behind a law is to override the actual words of that law is one of those eternal questions that will always be around to challenge lawyers and jurists. Suffice to say we are obviously not going to resolve it now. What we can do, however, is ascertain a few basic principles applicable to the case at hand.
“We start with the two statutes bearing directly on the interpretation of statutes, sections 1858 and 1859 of the Code of Civil Procedure. Section 1858 is a simple declaration. ‘In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . .’
“But the court’s task is a little more complex than just sticking to the text. Section 1859 directs the court to a consideration of the intent of the Legislature if possible. ‘In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible . . . .’
“The two statutes could easily collide were it not for those two words ‘if possible’ in section 1859. By putting those escape words in the ‘intent’ statute rather than the ‘text’ statute, it appears that, when push comes to *Supp. 17 shove, inescapably plain text should prevail. (Or, to be precise, plain text will prevail most of the time—there are a few exceptions, mentioned in passing below, for scrivener’s errors, absurd results, and results at odds with the unmistakable or clear intent of the Legislature.)
“So courts should start, . . . , with the actual language of the statute, and if the text is clear as applied to a given case, and it does not fall into any of the exceptions, stop there. [Citation.] As Oliver Wendell Holmes said, ‘we do not inquire what the legislature meant; we ask only what the statute means.’ [Citation.] If there is any ‘modem trend’ in this area, it is more and more to emphasize the actual words of the statute.” (Italics in original, fn. omitted.)
Examining the language of the section in question, we find “speed limit,” as that term is used with reference to enforcement, is not modified by “prima facie.” From this, appellant argues the section is ambiguous and, thus, consideration of legislative intent is necessary. However, such an interpretation would require us to read the statute as if it contained the all-inclusive, indefinite article “a,” i.e., “enforcement of a speed limit.” Notably, the Legislature chose the definite article “the” not the indefinite, and so, the statute reads, “enforcement of the speed limit.” (Veh. Code, § 40802, subd. (a)(2), italics added.)
Within the sentence under consideration, there is but one reference to “speed limit” to which the definite article may refer. The reference is to a subset of speed limits; namely, prima facie speed limits.
The literal meaning being clear, although the analysis arcane, no reference to a general purpose of the Legislature is required. “In summary: If an officer testifies only that he clocked a defendant on radar at a specified speed in excess of [the maximum speed limit], no ‘speed trap’ is involved, and the anti-speed-trap laws do not apply. If, however, that officer relies on a prima facie or posted speed limit, that officer is incompetent as a witness and any evidence concerning the vehicle’s speed is inadmissible unless an adequate survey is introduced.” (People v. DiFiore, supra, 197 Cal.App.3d at pp. Supp. 29-30, fn. omitted.)
The judgment is affirmed.
*Supp. 18 Appendix
Vehicle Code section 40802.
(a) A “speed trap” is either of the following:
(1) A particular section of a highway measured as to distance and with boundaries marked, designated, or otherwise determined in order that the speed of a vehicle may be calculated by securing the time it takes the vehicle to travel the known distance.
(2) A particular section of a highway with a prima facie speed limit that is provided by this code or by local ordinance under subparagraph (A) of paragraph (2) of subdivision (a) of Section 22352, or established under Section 22354, 22357, 22358, or 22358.3, if that prima facie speed limit is not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation, and enforcement of the speed limit involves the use of radar or any other electronic device that measures the speed of moving objects. This paragraph does not apply to a local street, road, or school zone.
(b) (1) For purposes of this section, a local street or road is defined by the latest functional usage and federal-aid system maps submitted to the federal Highway Administration, except that when these maps have not been submitted, or when the street or road is not shown on the maps, a “local street or road” means a street or road that primarily provides access to abutting residential property and meets the following three conditions:
(A) Roadway width of not more than 40 feet.
(B) Not more than one-half of a mile of uninterrupted length. Interruptions shall include official traffic control signals as defined in Section 445.
(C) Not more than one traffic lane in each direction.
(2) For purposes of this section “school zone” means that area approaching or passing a school building or the grounds thereof that is contiguous to a highway and on which is posted a standard “SCHOOL” warning sign, while children are going to or leaving the school either during school hours or during the noon recess period. “School zone” also includes the area approaching or passing any school grounds that are not separated from the highway by a fence, gate, or other physical barrier while the grounds are in use by children if that highway is posted with a standard “SCHOOL” warning sign.
*Supp. 19 (c)(1) When all of the following criteria are met, paragraph (2) of this subdivision shall be applicable and subdivision (a) shall not be applicable:
(A) When radar is used, the arresting officer has successfully completed a radar operator course of not less than 24 hours on the use of police traffic radar, and the course was approved and certified by the Commission on Peace Officer Standards and Training.
(B) When laser or any other electronic device is used to measure the speed of moving objects, the arresting officer has successfully completed the training required in subparagraph (A) and an additional training course of not less than two hours approved and certified by the Commission on Peace Officer Standards and Training.
(C) (i) The prosecution proved that the arresting officer complied with subparagraphs (A) and (B) and that an engineering and traffic survey has been conducted in accordance with subparagraph (B) of paragraph (2). The prosecution proved that, prior to the officer issuing the notice to appear, the arresting officer established that the radar, laser, or other electronic device conformed to the requirements of subparagraph(D).
(ii) The prosecution proved the speed of the accused was unsafe for the conditions present at the time of alleged violation unless the citation was for a violation of Section 22349, 22356, or 22406.
(D) The radar, laser, or other electronic device used to measure the speed of the accused meets or exceeds the minimal operational standards of the National Traffic Highway Safety Administration, and has been calibrated within the three years prior to the date of the alleged violation by an independent certified laser or radar repair and testing or calibration facility.
(2) A “speed trap" is either of the following:
(A) A particular section of a highway measured as to distance and with boundaries marked, designated, or otherwise determined in order that the speed of a vehicle may be calculated by securing the time it takes the vehicle to travel the known distance.
(B) (i) A particular section of a highway or state highway with a prima facie speed limit that is provided by this code or by local ordinance under subparagraph (A) of paragraph (2) of subdivision (a) of Section 22352, or established under Section 22354, 22357, 22358, or 22358.3, if that prima facie speed limit is not justified by an engineering and traffic survey *Supp. 20 conducted within one of the following time periods, prior to the date of the alleged violation, and enforcement of the speed limit involves the use of radar or any other electronic device that measures the speed of moving objects:
(I) Except as specified in subclause (II), seven years.
(II) If an engineering and traffic survey was conducted more than seven years prior to the date of the alleged violation, and a registered engineer evaluates the section of the highway and determines that no significant changes in roadway or traffic conditions have occurred, including, but not limited to, changes in adjoining property or land use, roadway width, or traffic volume, 10 years.
(ii) This subparagraph does not apply to a local street, road, or school zone.

Before McNatt, P. J., Sueyres and Harrington, JJ.